UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONIQUE GRIMES, as Personal Representative
of the Estate of DAMON GRIMES, Deceased,

    Plaintiff,

v

TROOPER MARK BESSNER,
TROOPER ETHAN BERGER, and
SGT JACOB LISS,

    Defendants.

Case No. 17-cv-12860
Hon. Gershwin A. Drain
*consolidated with*
Case No. 17-cv-13580

---

| | |
|---|---|
| GEOFFREY N. FIEGER (P30441) <br> JAMES J. HARRINGTON, IV (P65351) <br> Fieger, Fieger, Kenney & Harrington, P.C. <br> Attorneys for Plaintiff <br> 19390 West 10 Mile Road <br> Southfield, MI 48075 <br> (248) 355-5555 | MARK E. DONNELLY (P39281) <br> JOHN F. FEDYNSKY (P65232) <br> Assistant Attorneys General <br> Attorneys for Berger & Liss <br> Civil Litigation, Employment & <br> Elections Division <br> P.O. Box 30736 <br> Lansing, MI 48909 <br> (517) 373-6434 |

**PLAINTIFF'S MOTION FOR SANCTIONS
FOR SPOLIATION OF EVIDENCE**

    NOW COMES Plaintiff MONIQUE GRIMES, Personal Representative of the Estate of DAMON GRIMES, deceased, by and through her counsel, and pursuant to Federal Rule of Civil Procedure 37 respectfully requests that this Honorable Court grant Plaintiff's Motion for Sanctions for Spoliation of Evidence for the reasons discussed below and in the accompanying Brief in Support.

1

Through this Court's previous order, the Michigan State Police were required to preserve the patrol car that was involved in the incident that caused Damon Grimes's death. The Michigan State Police failed to comply with that order, allowed the vehicle to remain in service, and lost possession and control of the vehicle after it was involved in a subsequent collision. These actions have resulted in spoliation of a critical piece of evidence that was essential to refuting the defense of MSP Trooper Ethan Berger.

WHEREFORE, Plaintiff MONIQUE GRIMES, Personal Representative of her deceased son, DAMON GRIMES, respectfully requests that this Court GRANT her motion and enter an order sanctioning MSP and Defendants for spoliation of evidence. Plaintiff requests a harsh sanction based on the blatant disregard of this Court's order, such as the entry of a default in Plaintiff's favor. Alternatively, Plaintiff would request that Defendant Berger be precluded from arguing to the jury that he did not see Trooper Bessner immediately prior to deployment of the taser that killed Damon Grimes; this sanction is directly tied to the destruction of the patrol car.

Respectfully submitted,

*/s/ James J. Harrington, IV*
GEOFFREY N. FIEGER (P30441)
JAMES J. HARRINGTON IV (P65351)
Attorneys for Plaintiff

Dated: May 21, 2019

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MONIQUE GRIMES, as Personal Representative
of the Estate of DAMON GRIMES, Deceased,

    Plaintiff,

v

TROOPER MARK BESSNER,
TROOPER ETHAN BERGER, and
SGT JACOB LISS,

    Defendants.

Case No. 17-cv-12860
Hon. Gershwin A. Drain
*consolidated with*
Case No. 17-cv-13580

---

| | |
|---|---|
| GEOFFREY N. FIEGER (P30441) | MARK E. DONNELLY (P39281) |
| JAMES J. HARRINGTON, IV (P65351) | JOHN F. FEDYNSKY (P65232) |
| Fieger, Fieger, Kenney & Harrington, P.C. | Assistant Attorneys General |
| Attorneys for Plaintiff | Attorneys for Berger & Liss |
| 19390 West 10 Mile Road | Civil Litigation, Employment & |
| Southfield, MI 48075 | Elections Division |
| (248) 355-5555 | P.O. Box 30736 |
| | Lansing, MI 48909 |
| | (517) 373-6434 |

---

# BRIEF IN SUPPORT OF
# PLAINTIFF'S MOTION FOR SANCTIONS
# FOR SPOLIATION OF EVIDENCE

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i
INDEX OF AUTHORITIES ........................................................................................ ii
STATEMENT OF MOST CONTROLLING AUTHORITY ..................................... ii
QUESTION PRESENTED ......................................................................................... iv
INTRODUCTION ....................................................................................................... 1
STATEMENT OF RELEVANT FACTS .................................................................... 1
LEGAL ARGUMENT ................................................................................................. 7
    I.   A harsh sanction is necessary based on MSP's failure to maintain and preserve the patrol car that was being driven by Trooper Berger at the time that Trooper Bessner deployed his Taser into Damon Grimes, who was driving an ATV. There is no credible explanation as to how MSP lost possession and control of the patrol car, or allowed it to remain in service, after Plaintiff's multiple request for preservation and an order of this Court requiring its preservation. .................................................................................................... 7
CONCLUSION AND RELIEF REQUESTED ....................................................... 12

## INDEX OF AUTHORITIES

**Cases**

*Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) ....................................................7
*BancorpSouth Bank v. Herter,* 643 F.Supp.2d 1041
  (W.D. Tenn. June 5, 2009)...................................................................................10
*Beaven v. U.S. Dep't of Justice*, 622 F.3d 540 (6th Cir. 2010)....................... 8, 9, 10
*Forest Labs, Inc., v Caraco Pharm. Labs Ltd.,* 2009 WL 998402
  (E.D Mich. April 14, 2009)...................................................................................7
*Goodman v. Praxair Servs., Inc.,* 632 F. Supp. 2d 494 (D. Md. 2009).....................9
*West v. Goodyear Tire & Rubbber Co.,* 167 F.3d 776 (2d Cir. 1999) ....................11
*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065
  (6th Cir. 2014)......................................................................................................10

# STATEMENT OF MOST CONTROLLING AUTHORITY

- *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540 (6th Cir. 2010): Sixth Circuit opinion discussing spoliation of evidence and some of the sanctions that are available to a party who is prejudiced by the improper spoliation of evidence.

## QUESTION PRESENTED

I. Is a harsh sanction necessary based on MSP's failure to maintain and preserve the patrol car that was being driven by Trooper Berger at the time that Trooper Bessner deployed his Taser into Damon Grimes, who was driving an ATV given that there is no credible explanation as to how MSP lost possession and control of the patrol car, or allowed it to remain in service, after Plaintiff's multiple request for preservation and an order of this Court requiring its preservation?

                Plaintiff says;    Yes.

# INTRODUCTION

The patrol car that Trooper Ethan Berger drove alongside Damon Grimes and his ATV as Trooper Mark Bessner, outstretched through the window, deployed his taser into Damon's body is gone. Contrary to multiple preservation requests and an order from this Court, MSP allowed the vehicle to be put back into service. The vehicle was then destroyed in a subsequent crash. MSP's actions in the case are reprehensible and should be severely sanctioned. The destruction of the patrol car has irreparably impaired Plaintiff's ability to defend against the contrived argument that has been advanced by Trooper Berger: that he 'didn't see' Trooper Bessner as he readied and deployed his taser into Damon Grimes. The two men were inches apart in the same car when the taser was deployed.

# STATEMENT OF RELEVANT FACTS

This is a civil rights case brought pursuant to 42 U.S.C. § 1983. Damon Grimes was killed on August 26, 2017, as a result of the gross negligence of Michigan State Police Trooper's Mark Bessner and Ethan Berger.

A.   *Plaintiff's Efforts to Preserve the Patrol Car*

On August 30, 2017, four days after Damon's death Monique Grimes, the mother of Damon Grimes, filed her complaint in this matter. On the same day, Plaintiff's counsel sent a demand for preservation of evidence to the Michigan

1

State Police ("MSP"). (Exhibit 1, August 30, 2017 Preservation Letter). That letter specifically requested that: "**the subject vehicle and all of its parts components** (including but not limited to the crash data)" be preserved.

Subsequently, on August 31, 2017, Plaintiff's counsel sent a supplemental demand for preservation of evidence directed to the MSP. (Exhibit 2, August 31, 2017 Preservation Letter). That letter also requested that MSP preserve "**the subject vehicle and all of its parts components** (including but not limited to the crash data)."

The preservation letters directed to the MSP were received and signed for on September 5, 2017 by Jeff Bailey, who identified himself as an Agent for the State of Michigan. (Exhibit 3, Green Cards from Preservation Letters directed to Michigan State Police)

To further assure that all relevant evidence related to Damon Grimes's death was preserved, Plaintiff filed her Emergency Ex Parte Motion to Preserve All Evidence and To Produce All Evidence on October 3, 2017. (Dkt. No.7) This motion was directed to several parties, including the State of Michigan and the Michigan State Police. *Id.*

This Court held oral argument on Plaintiff's Emergency Ex Parte Motion to Preserve All Evidence and Produce All Evidence on October 6. Following that hearing, the Court entered an order that granted in part Plaintiff's motion and

established certain deadlines. (Dkt. No. 15) The order also requested Plaintiff to submit a proposed preservation order. *Id.*

On November 7, 2017, this Court entered an Order to Preserve Evidence, ordering that:

> IT IS HEREBY ORDERED that the **State of Michigan, the Michigan State Police**, the City of Detroit and the Detroit Police Department, together with their officers, agents, employees, independent contractors and/or servants **shall preserve all of the evidence in any way relating to the incident and/or the death of DAMON GRIMES**. *[emphasis added]*

(Dkt. No.15)

On April 15, 2019, Plaintiff's Counsel sent an Arbitrary Notice of Inspection to the Attorney General's office requesting the ATV, the F150 Truck, and the patrol car be made available for inspection. (Exhibit 4 Arbitrary Notice of Inspection) In response to Plaintiff's Arbitrary Notice of Inspection, the Attorney General responded and said:

> "Jim – just following up on this correspondence and our conversation at the recent status conference with the court. The Ford F150 truck is not in the custody or control of the Michigan State Police. **Neither is the patrol car, as it was involved in a subsequent accident and taken out of service**. Access to the ATV would have to go through my office and the Michigan State Police, so please coordinate appropriately when you know the details about when and for how long." *[emphasis added]*

(Exhibit 5 Email from John Fedynsky)

At no time prior to Mr. Fedensky's email was Plaintiff made aware that the patrol car was placed into service or that Plaintiff's ability to inspect and measure

3

that car might be in jeopardy. Plaintiff was never even notified that the vehicle was destroyed until she persisted in her efforts to inspect and take measurements of the vehicle. That subsequent collision occurred on February 11, 2018. Three months after this Court's order requiring the preservation of evidence, MSP allowed the vehicle to be destroyed. Neither MSP nor Defendants ever came before this Court and requested relief from the order of preservation.

B.   *The Relevancy of the Patrol Car*

The ability of inspect and measure the patrol car was critical to refuting a defense that was recently advanced by Trooper Berger during his deposition. Trooper Berger testified that, despite sitting right next to him, he never saw Trooper Mark Bessner pull his taser out and tase Damon Grimes:

> Q.   If you would have seen Trooper Bessner pulling the Taser out and let's just say you assume that you saw that, would you have told him, don't Tase him?
>
> A.   Assuming that I saw that.
>
> Q.   Yes.
>
> A.    I did not see that, but assuming that I saw that, I would tell him, yes, don't Tase him while we're moving.

(Exhibit 6 Deposition of Ethan Berger, Page 28 ln 13-20). Trooper Berger then reiterated that he never saw Trooper Bessner (who was immediately to his right)

4

take out his taser, aim it out the window at Damon Grimes, and deploy the taser at page 35, ln 1-4.

When questioned as to how it was that he did not see Trooper Berger, Trooper Bessner testified:

> Q. Why didn't you see that?
>
> A. I don't even know how to answer that question. Why didn't I see that?
>
> Q. How did you not see that? **It was happening directly to your right.**
>
> A. Well, apparently my peripheral vision is bad according to you. And, also, I could have been looking to the left. And when you're driving a patrol car in a pursuit, you've got tunnel vision. You're paying attention to other things other than what your partner to your right is doing.
>
> Q. You said "get ready" twice, right?
>
> A. It doesn't mean I had to see my partner.
>
> Q. Okay. But you said "get ready" twice, right?
>
> A. I said "get ready" twice.
>
> Q. Get ready for what?
>
> A. Well, we were coming up on Gratiot Avenue. **I saw fields off to our right**. I thought the person might bail or something was about to happen.

(Exhibit 6 Deposition of Ethan Berger, Pages 35-36, emphasis added)

5

In light of Trooper Berger's now-claimed defense, asserting that he did not visualize what was occurring inches to his right, Plaintiff needed to inspect and measure the patrol car. Plaintiff needed this information to provide it to an expert witness(es) who could offer the jury with opinions related to peripheral vision, human factors, and perception/reaction times. Plaintiff submits that Defendant Berger's claim that he had no "knowledge" that Trooper Bessner was going to deploy his taser is false.

Evidence and analysis could have refuted Trooper Berger's created defense. However, much of that evidence would have come from expert witness opinions derived from a combination of the ophthalmologic examination of Trooper Berger and measurements taken from the patrol car. However, because of MSP's failure to comply with this Court's order, as well as Plaintiff's multiple letters requesting preservation of the car, Plaintiff is now unable to obtain the measurements that are a critical component of her expert's opinions. MSP's actions must be sanctioned.

## LEGAL ARGUMENT

**I. A harsh sanction is necessary based on MSP's failure to maintain and preserve the patrol car that was being driven by Trooper Berger at the time that Trooper Bessner deployed his Taser into Damon Grimes, who was driving an ATV. There is no credible explanation as to how MSP lost possession and control of the patrol car, or allowed it to remain in service, after Plaintiff's multiple request for preservation and an order of this Court requiring its preservation.**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Forest Labs, Inc., v Caraco Pharm. Labs Ltd.*, 2009 WL 998402 at *1 (E.D Mich. April 14, 2009) "[A] federal court's inherent powers include broad discretion to craft proper sanctions for spoliated evidence." *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009). Federal spoliation law applies in federal court because the authority to impose sanctions stems from the Court's inherent powers. *Id.* at 652. Because a spoliation ruling is evidentiary in nature, "federal courts generally apply their own evidentiary rules in both federal question and diversity matters." *Id*. at 652.

Spoliation sanctions can be imposed for conduct that ranges from simply negligent to conduct that involves a malicious intent. A "proper spoliation sanction should serve both fairness and punitive functions, but its severity should correspond to . . . the party's degree of fault under the circumstances[.]" *Beaven v.*

*U.S. Dep't of Justice*, 622 F.3d 540, 553-554 (6th Cir. 2010) (cleaned up). "[A] party's degree of fault may range from innocence through the degrees of negligence to intentionality." *Id*. "Thus, a district court could impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Id*. The "culpable" state of mind is established by showing that the evidence was destroyed knowingly *or* negligently. *Id.*

Case law recognizes various sanctions available to a party who is prejudiced by the destruction of relevant evidence. For example, the Sixth Circuit recognized that a non-rebuttable adverse inference can be given after finding that the defendant's destruction of evidence severely compromised the plaintiff in *Beaven,* 622 F.3d at 555. *Beaven* also discussed situations when a permissive inference may apply. *Id.* at 555. The *Beaven* court provided the following discussion about possible sanctions, citing the various authorities:

> *See Residential Funding Corp.,* 306 F.3d at 108 ("[The] sanction [of an adverse inference] should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference." (citation omitted)); *Silvestri,* 271 F.3d at 593—95 (upholding dismissal as sanction for plaintiff's negligent spoliation where highly prejudicial to other party because the plaintiff "denied ... [the defendant] access to the only evidence from which it could develop its defenses adequately"). The district court's use of a spoliation inference for a critical element of the case is not unprecedented. *See Rogers v. T.J. Samson Cmty. Hosp.,* 276 F.3d 228, 232 (6th Cir.2002) ( " 'When ... a plaintiff is unable to prove an essential element of her case due to the negligent loss or destruction of

8

> evidence by an opposing party, ... it is proper for the trial court to create a rebuttable presumption that establishes the missing elements of the plaintiff's case that could only have been proved by the availability of the missing evidence.' " (quoting *Welsh,* 844 F.2d at 1248)). And although an adverse inference is usually only permissive for the factfinder, not mandatory, *see Blinzler v. Marriott Int'l, Inc.,* 81 F.3d 1148, 1158–59 (1st Cir.1996), here the district court judge was the factfinder and therefore was free to accept the inference and discredit the Defendants' proffered testimony to the contrary.

*Id.* at 555.

The fact that the Michigan State Police are not a party to this action does not limit this Court's ability to impose a just sanction. Courts have recognized that the duty to preserve evidence may extend beyond the parties themselves and include evidence entrusted to their agents, experts, insurers, attorneys, and the like. "Parties to litigation are deemed to be in 'control' of information to which they have access or the legal right to obtain, even if it is actually in the possession, custody or control of a third party." *Goodman v. Praxair Servs., Inc.,* 632 F. Supp. 2d 494, 514 (D. Md. 2009). Here, MSP is the employer of both Trooper Berger and Trooper Liss. The Attorney General's Office has represented both MSP and the Troopers throughout this litigation. A sufficient nexus exists between Defendants and MSP to warrant sanctioning Defendants for MSP's spoliation.

A party seeking a spoliation sanction because evidence was destroyed must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a

9

culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1070 (6th Cir. 2014) citing *Beaven,* 622 F.3d at 553.

    The first factor discussed in *Yoder* looks to whether the party having control over the evidence had an obligation to preserve it at the time that it was destroyed. Here, there is no doubt that MSP had an obligation to preserve the vehicle. The Court ordered MSP to do so. The second factor considers whether the records/vehicle was destroyed with a culpable intent. The three states of mind that satisfy the culpability requirement are (1) bad faith destruction, (2) gross negligence, and (3) ordinary negligence. *BancorpSouth Bank v. Herter,* 643 F.Supp.2d 1041, 1061 (W.D. Tenn. June 5, 2009). Here, Plaintiff submits that the conduct of allowing the patrol car to be put back into service rises to the level of bad faith destruction. MSP knew that by allowing additional officers to drive the car that the seat would be moved, the controls would be changed/updated, and the vehicle would not remain in substantially the same condition as it was on the day of Damon's death. Despite that knowledge, it chose to ignore this Court's order and place the vehicle back into service. Finally, the third factor considers whether the destroyed evidence was relevant to a claim or defense. Here, the layout and the measurements from the patrol car go directly to Trooper Berger's defense related

10

to his ability to visualize and perceive Trooper Bessner as he aimed, and eventually fired, the taser at Damon Grimes.

Considering the record in this case, a harsh sanction for spoliation should be granted. A spoliation sanction should be "molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *West v. Goodyear Tire & Rubbber Co.,* 167 F.3d 776, 779 (2d Cir. 1999). Considerations to take into account when crafting a sanction can include the need to deter parties from engaging in spoliation, placing the risk of an erroneous judgment on the party who wrongfully created the risk; and restoring the prejudiced party to the same position he would have been in the absence of the wrongful destruction of evidence. *Id.*

The appropriate sanction here given MSP's flagrant disregard of this Court's order and its destruction of the patrol car is the entry of a default in Plaintiff's favor. While MSP may not have intended the subsequent collision, it certainly knew that its conduct of putting the car back into service was likely to lead to the alteration of the vehicle. Alternatively, Plaintiff would request that Defendant Berger be precluded from arguing to the jury that he did not see Trooper Bessner immediately prior to deployment of the taser that killed Damon Grimes; this sanction is directly tied to the destruction of the patrol car. The ability to inspect and measure the patrol car was a critical part of refuting Trooper Berger's claim

11

that he could not see what Trooper Bessner was doing (thereby intervening to save Damon's life). Much of the evidence that would have refuted Trooper Berger's defense would have come from expert witness opinions derived from a combination of the ophthalmologic examination of Trooper Berger and measurements taken from the patrol car. However, because of MSP's failure to comply with this Court's order, as well as Plaintiff's multiple letters requesting preservation of the car, Plaintiff is now unable to obtain the measurements that are a critical component of her expert witnesses' opinions. MSP's actions should be harshly sanctioned.

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, Plaintiff MONIQUE GRIMES, Personal Representative of her deceased son, DAMON GRIMES, respectfully requests that this Court GRANT her motion and enter an order sanctioning MSP and Defendants for spoliation of evidence. Plaintiff requests a harsh sanction based on the blatant disregard of this Court's order, such as the entry of a default in Plaintiff's favor. Alternatively, Plaintiff would request that Defendant Berger be precluded from arguing to the jury that he did not see Trooper Bessner immediately prior to deployment of the taser that killed Damon Grimes.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td><i>/s/ James J. Harrington, IV</i><br>GEOFFREY N. FIEGER (P30441)<br>JAMES J. HARRINGTON IV (P65351)<br>Fieger, Fieger, Kenney & Harrington, P.C.<br>Attorneys for Plaintiff<br>19390 West Ten Mile Road<br>Southfield, MI 48075</td></tr>
<tr><td>Dated: May 21, 2019</td><td>(248) 355-5555</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/Samantha M. Teal
**Legal Assistant to Geoffrey N. Fieger**

13