UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONIQUE GRIMES, as Personal Representative of the Estate of Damon Grimes, deceased

    Plaintiff,

v

TROOPER MARK BESSNER, TROOPER ETHAN BERGER, and SGT. JACOB LISS,

    Defendants.

No. 2:17-cv-12860

*consolidated with*

Case No. 17-cv-13580

HON. GERSHWIN A. DRAIN

MAG. ELIZABETH A. STAFFORD

Geoffrey N. Fieger (P30441)
James J. Harrington IV (P65351)
Danielle L. Dezbor (P79488)
Stephanie L. Arndt (P66870)
Fieger, Fieger, Kenney & Harrington, P.C.
Attorneys for Plaintiff
19390 W. 10 Mile Road
Southfield, MI 48075
(248) 355-5555
g.fieger@fiegerlaw.com
j.harrington@fiegerlaw.com
d.dezbor@fiegerlaw.com
s.arndt@fiegerlaw.com

John G. Fedynsky (P65232)
Mark E. Donnelly (P39281)
Joseph T. Froehlich (P71887)
Assistant Attorneys General
Attorneys for Defs. Berger and Liss
Michigan Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
fedynskyj@michigan.gov
donnellym@michigan.gov
froehlichj1@michigan.gov

## Exhibit 5

Excerpts of Mark Bessner's criminal trial transcript

```
 1                      STATE OF MICHIGAN
            THIRD JUDICIAL CIRCUIT COURT OF MICHIGAN
 2                       CRIMINAL DIVISION

 3

 4

 5
       THE PEOPLE OF THE STATE OF MICHIGAN    File No. 18-000923-01-FC
 6

 7        v

 8
       MARK LIN BESSNER,
 9
                 Defendant.
10
       _____/
11

12
                         JURY TRIAL - VOLUME IV
13         BEFORE THE HONORABLE MARGARET M. VAN HOUTEN
              Detroit, Michigan - Thursday, October 25, 2018
14

15
       APPEARANCES:
16

17  FOR THE PEOPLE:        MATTHEW HAMILTON KEMP PENNEY (P74079)
                           ROBERT J. DONALDSON (P36494)
18                         Wayne County Prosecutor's Office
                           1441 St. Antoine Street, Floor 12
19                         Detroit, Michigan 48226-2387
                           (313) 224-5816
20
    FOR THE DEFENDANT:     RICHARD GERARD CONVERTINO (P62829)
21                         LENORE M. FERBER (P24223)
                           Convertino & Associates PLLC
22                         424 North Main Street
                           Plymouth, Michigan 48170-1347
23                         (734) 927-9900

24
    COURT REPORTER:        Kim Blackburn, RPR, CSR 7263
25                         Third Circuit Court
                           (313) 224-6813
```

```
 1                    T A B L E   O F   C O N T E N T S

 2

 3  WITNESSES - PEOPLE'S                                            PAGE

 4  DARKO BABIC
      Voir dire by Mr. Penney                                          4
 5    Voir dire by Mr. Convertino                                      8
      Voir dire by Mr. Penney                                         10
 6    Direct examination by Mr. Penney                                11
      Cross-examination by Mr. Convertino                             19
 7    Redirect examination by Mr. Penney                              20

 8  WITNESSES - DEFENSE

 9  MARK BESSNER
      Direct examination by Mr. Convertino                            31
10    Cross-examination by Mr. Penney                                 51
      Continued cross-examination by Mr. Penney                       88
11    Juror questions                                                 92
      Cross-examination by Mr. Penney                                 95
12    Redirect examination by Mr. Convertino                          97

13
    EXHIBITS      DESCRIPTION                      IDENTIFIED     ADMITTED
14
    PX#13         Babic Report                         16            16
15  PX#15         Stipulation re: PX#10                22            24
    PX#16         Stipulation re: AFIDS (Lt. Amley)    23            24
16

17

18  OTHER MATERIAL IN TRANSCRIPT

19  Finding for expert witness                                        11
    Stipulations placed on record by Mr. Penney                       22
20  Waiver of remaining witness by Mr. Penney                         24
    Voir dire of Defendant as to right to remain silent               27
21  Motion for mistrial by Mr. Convertino                             73
    Reply to motion by Mr. Penney                                     74
22  Response by Mr. Convertino                                        75
    Motion to grant Berger immunity, or admit his Statement, and/or
23   admit portions of Brewer interview of Berger by Mr. Convertino   79
    Ruling on Motions                                                 84
24  Motion for curative Instruction by Mr. Convertino                 85
    Stipulation/curative Instruction read by the Court                87
25
```

```
 1  Q    Why did you grab your taser?
 2  A    Well, if this driver's going to flee from police, you know, it
 3       goes hand in hand, in my experience, that there's a chance
 4       there's going to be a fight afterwards in trying to take this
 5       guy into custody.
 6  Q    What did you do with the taser when you -- where was your
 7       taser?
 8  A    Well, the taser was in my right hand.
 9  Q    And was it holstered?
10  A    Well, I holster it on my left.  It's what we call a "cross
11       draw".
12  Q    Okay.  And so you removed it.  And where was it during the
13       time that you thought that the driver might ditch and run?
14  A    Well, what I did was, you know, you take the seatbelt off, and
15       then I've got the taser down here, you know.
16            THE COURT:  For the record, he has his hand down by
17       his right leg.
18            MR. CONVERTINO:  Thank you, your Honor.
19            MR. CONVERTINO:  May I proceed?
20            THE COURT:  You may.
21            MR. CONVERTINO:  Thank you.
22  Q    (CONTINUED BY MR. CONVERTINO):  At that point in time, what
23       was the position of the patrol car in relation to the ATV?
24  A    At what point?
25  Q    When you took your taser out and put it on your right knee?
```

46

```
 1  A    Well, the vehicle was -- the ATV was in front of our vehicle.
 2  Q    And what happened after that?
 3  A    Well, after that the --
 4  Q    Did the ATV slow down at some point in time?
 5  A    Yeah, yeah, absolutely the ATVs slowed down.  And Ethan, you
 6       know, we overtook him a little bit -- or I wouldn't say
 7       overtook him -- but we pulled up kind of side-by-side to him.
 8  Q    How close were you to the driver at that point?
 9  A    It was close.  You know, it was very close.
10  Q    And what did you see?
11  A    I saw him reach for his waistband again.
12  Q    And did he look at you, or did he look away?
13  A    Yeah, he looked at me.
14  Q    And did you make eye contact with him?
15  A    Yeah.
16  Q    And as a result of that, what did you do?
17  A    I did the only thing that I thought that I could do at the
18       time, and that was I deployed the weapon that was in my hand.
19  Q    And was your purpose by deploying your weapon to hit the
20       person on the ATV?
21  A    Yes.
22  Q    Now, is that policy acceptable policy and procedure?
23  A    Yes.
24  Q    Okay.  And in what way is it acceptable policy and procedure
25       for you to deploy your taser from a moving vehicle to another
```

47

```
 1       moving vehicle?
 2  A    Well, like -- well, like Lt. Schrader said yesterday that the
 3       issue is not whether the vehicles were moving, it was taking
 4       all of the factors into consideration, you know, it was a
 5       deadly-force situation is what I thought.  And I used the tool
 6       that I had available to me.
 7  Q    Okay.  And had you had another tool available, what would your
 8       reaction have been?
 9  A    It would have been to use that tool.
10  Q    Did you believe that your life, or the life of your partner or
11       others, was in jeopardy at that time?
12  A    Yes, absolutely.
13  Q    How long did it take you, sir, to come to that decision?
14  A    It was like that.  It was -- it was a split second.  I didn't
15       have any time to make the decision.
16  Q    What did you see after you deployed your taser?
17  A    Well, I saw the driver turn the wheel hard, and it was almost
18       like he lost control, like he turned it too hard.
19  Q    Did you believe that you, in your mind at that time, did you
20       believe that you struck the person with the taser probes?
21  A    I had no idea.  I didn't think so.
22  Q    And why?
23  A    Because there was no reaction from him.  There was no reaction
24       consistent with a taser deployment.
25  Q    And what reaction would you think would be consistent with a
```

```
 1  STATE OF MICHIGAN      )
 2                         )
 3  COUNTY OF WAYNE        )
 4
 5
 6
 7              I certify that this transcript, consisting of 99
 8  pages, is a complete, true, and accurate transcript of testimony
 9  taken in this case on October 25, 2018.
10
11
12
13
14  __December 11, 2018_____      _/s/ Kim Blackburn_____
15  Date                          Kim Blackburn, RPR, CSR 7263
16                                Third Judicial Circuit Court
17                                Criminal Division
18                                1441 St. Antoine Street
19                                Detroit, Michigan 48226
20                                (313) 224-6813
21
22
23
24
25
```